## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| NEKO 2018 A, LLC, a Texas limited liability company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| Downs Law Group, P.A., a Florida professional association, | ) ) ) ) |
| Defendant. | ) |

Case No.

**REDACTED PUBLIC VERSION**

## COMPLAINT

Plaintiff NEKO 2018 A, LLC ("NEKO"), by and through its attorneys, files this Complaint against Defendant Downs Law Group, P.A. ("DLG"), and in support thereof alleges as follows:

### INTRODUCTION

1.      DLG pocketed nearly ▮▮▮▮▮▮▮ from NEKO under the auspices of a litigation funding agreement and then squandered it. DLG's financial malfeasance, reckless spending, self-dealing, and intentional flouting of the contractual financial controls resulted in DLG losing nearly all of NEKO's investment with virtually no return. Absent the appointment of a receiver to run DLG's business—an appointment DLG contractually agreed not to oppose in the event of default (a default DLG has now admitted)—NEKO's remaining collateral is at significant risk of irreparable harm.

2.      DLG is a plaintiff-side law firm primarily engaged in personal injury and mass tort litigation. While DLG may possess competent lawyers, its leader—Craig Downs—utterly failed in his management role. To say that Mr. Downs' business management of the firm was catastrophic is an understatement. For instance, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████.

3.      NEKO initially ██████████████████ in 2018. Given NEKO's outlays and its ongoing belief in the potential value of DLG's cases, NEKO subsequently made extensive efforts to try and collaborate on improving DLG's management practices, including ████████ ████████████████████████████████████████.[1] But DLG consistently failed to implement those necessary changes and reacted with indignation to NEKO's suggestions. NEKO thus has no choice but to enforce its right to have a receiver put in place to right the ship at DLG and focus any additional investment in a manner that effectively preserves NEKO's collateral in DLG's ongoing litigation matters.

4.      To that end, NEKO recently provided notice to DLG about its significant and material Events of Default, including ██████████████████████████████ ███████████████████████████████████████████████████ ████████████

---

[1] To be clear, NEKO's focus was on DLG's business management practices. NEKO had no role whatsoever in the handling of or strategic decisions DLG lawyers made in DLG-client legal matters.

5.      NEKO has suffered substantial damages as a result of DLG's breaches, but its recourse for those breaches under the parties' agreements is in arbitration. So here NEKO only seeks the oversight of a third-party receiver to preserve its collateral, which appointment DLG agreed not to oppose should it default on its obligations (and it admittedly has). The appointment of a receiver is explicitly excluded from the arbitration agreement.

6.      With the oversight of a receiver and targeted additional funding (which NEKO is willing to provide should this Court appoint a receiver), NEKO is optimistic that DLG lawyers will achieve successful outcomes for their clients in numerous of their cases within the next twelve to twenty-four months. That is the only way NEKO can preserve its collateral, and it is why the documents provide for a receivership should DLG breach its obligations.

### PARTIES

7.      NEKO 2018 A, LLC is a Texas limited liability company. It is wholly owned by a Bermuda holding company that has its principal place of business in Bermuda.

8.      Downs Law Group is a professional association and Florida-based law firm, organized under the laws of the state of Florida, with its principal place of business in Miami-Dade County, Florida. On information and belief, its owner, Craig T. Downs, is a resident and citizen of Florida.

### JURISDICTION & VENUE

9.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(2) because this dispute is between a citizen of this state and a citizen of a foreign state and the amount in controversy is in excess of $75,000. Plaintiff is a citizen of Bermuda. Defendant is a citizen of Florida.

10.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district.

## BACKGROUND

### I.     The Transaction Documents

11.     NEKO first entered into a Prepaid Forward Purchase Agreement ("PFPA") with DLG and its owner Craig T. Downs on September 14, 2018.

12.     The initial PFPA ███████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████ up to a maximum aggregate amount of ████████.

13.     That is, NEKO agreed to ███████████████████████████ ████████████████████████████████████████████████████ ████████████████████ ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ NEKO had no control over the conduct of the Litigation or the attorney-client relationship between DLG and the ultimate client in the Litigation. A copy of the PFPA is attached as **Exhibit 1.**

14.     Along with the PFPA, DLG entered into a Security Agreement with NEKO that pledged as collateral, among other things,████████████████████████████ (the "2018 Security Agreement"). A copy of the 2018 Security Agreement is attached as **Exhibit 2.**█████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

36904521.1

███████████████████████████████████████████████████████████████████

███████

15.     NEKO and DLG have amended and/or restated the PFPA nine times. The operative

PFPA is now the Seventh Amended and Restated Prepaid Forward Purchase Agreement ("7th

PFPA"). A copy of the 7th PFPA is attached as **Exhibit 3.**

16.     The 7th PFPA ██████████████████████████████████████████

████████████████████████████████████ It also—███████████████████████

███████████████████████████████████████████████████████████████████

███████████████████ (all of which DLG has since flouted).

17.     NEKO has already disbursed to DLG ████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

18.     █████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████.

19.     As of the date of this Complaint, NEKO has advanced $████████ to DLG. In

exchange, NEKO has received a grand total of $████████████████████████████████

█████████████████████████.

20.     In addition to the amendments to the PFPA, DLG and NEKO entered into several

amended securities agreements, ████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

**II.     DLG's Costs Explode** ██████████████████████████

21.     NEKO began advancing funds to ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

22.     NEKO has learned that DLG has spent nearly $████████ since the beginning of 2022. It has vastly expanded its operations in every category of expense but has done so with increasingly less business and financial discipline ████████████████████████ ██████. During that same period, based upon data recently available to NEKO, ████████ ██████████████████████████████████████████████████ ████████████████████████████

**A.  Unfathomable Growth in Personnel and Payroll**

23.     DLG increased its employee count ████████████████████. While some reductions were achieved in 2024, ████████████████████████████████████ ████████████████████.

24.    Total  payroll  (exclusive  of  benefit  costs)  was: ███████████████

████████████████████████████████████████████████████

███████ .

25.    While DLG achieved a net reduction of ███████████ during 2025, the current

headcount of ██ employees ████████████████████████████████

████████████████████████ .

**B.  Extravagant Office Space Expansion**

26.    Despite ███████████████████ , DLG has nearly doubled the size of its

office in Coconut Grove, incurred ████████ construction costs, and now pays more than ████████

per month in rent. Before the expansion in July 2022, DLG had ample office space with over

████████████████████████ .

27.    But in July 2022, DLG added ███████████ of additional space and then proceeded

to renovate the space with sleek modern finishes. The annual rent of this office space ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ .

**C.  Irresponsibly Costly ███████████████████**

28.    ████████████████████████████████ DLG has—over the

past several years—mismanaged the cost ████████████████████████

███████████████ .

29.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ .

30.   ███████████████████████████████████████████

███████████████████████.

31.   All of these shifts and changes made it more difficult for NEKO to track DLG's finances.

32.   ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████.

33.   ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████.

**D.  Over Budget Every Year**

34.   Despite the PFPA requirements to do so, DLG has failed to produce accurate firm budgets for the past four years. Even after receiving assistance and advice on how to produce a fulsome projected firm budget, DLG still is either unable or unwilling to produce the requisite report on a "budget vs. actual" expense basis.

35.   On several occasions, NEKO staff and outside advisors have spent significant time with the Controller of DLG to produce a comprehensive budget projection for DLG.

36.   Although  DLG  refuses  to  produce  fulsome  or  accurate  budget  reports,  ████████

███████████████████████████████████████████

███████████████████████.

36904521.1

37. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████ .

38. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████ .

III.   **Significant Mismanagement Persists Despite Attempts At Support And Remediation**

A.   **Financial Reporting Failures**

39.   A critical part of every contract NEKO has signed with DLG requires ████████

██████████████████████████████████████████

███   ██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

40.   DLG has repeatedly breached this financial reporting covenant and continues to do so. Indeed, NEKO discovered that ████████████████████████████████

██████████████████████████████████████████ .

41.   In the fall of 2023, in an effort to protect its collateral (and ultimately the firm's clients), NEKO retained ████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ . NEKO staff requested

information from DLG, connected ██████████ directly with DLG operations staff, held numerous telephone conferences, restated and followed up on the requested documentation, and continued working with DLG staff for nearly three months. DLG could not comply with the ████ ████ requests—making the exercise essentially pointless. So NEKO discontinued the ████ ████ project at the end of January 2024.

42.     ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████

43.     ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████

44.     After the pointless ██████████ engagement, NEKO insisted that DLG engage a financial administrator to work with DLG on ████████████████████████ ██████████ and to provide some ongoing management and operations support and consulting.

45. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████

46.     As of the date of this Complaint, DLG has *never* complied with its financial

covenants and has not produced either quarterly or annual financial statements. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████.

**B.  DLG's Resistance to Compliance**

47.     In December 2023, ████████████████ conducted a focused operational and

financial review of DLG. ████████████████ concluded that ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

48.     ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

11

49.   ██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████.

50.   ██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████.

51.   ██████  ████████   process   recommendations   centered   on   ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████

52.   The results of this review were presented to DLG in mid-January 2024. But the firm largely rejected the plan, ████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████. And tellingly, there was no

meaningful progress on governance or financial management, ████████████████████

██████████████████████████████████████████████████████████

████████.

53.     After this operational review and DLG's initial response, both NEKO and ███

████████████████ regularly urged bolder action from a governance, management, and

financial transparency perspective. DLG declined, ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████.

### C. Operating Plan

54.     In response to DLG's outright refusal to make changes to its business and

management practices, NEKO requested that DLG produce an operating plan for the remainder of

2024 █████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████.

55.     Instead, DLG produced a two-page document that described ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████.

13

56.     All of that was a lie, and the DLG Operating Plan was devoid of any provisions addressing management practices, staff size, operating cost, or financial reporting. So what transpired was, unsurprisingly, more status quo.

57.     As detailed previously, DLG was ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████.

**D.  Failure to Manage Expenses as Instructed**

58.     Throughout the last two to three years, DLG has continued to incur and use ████ ████████ to pay for expenses ████████████████████████████████████ ████████████████.

59.     Most recently, ████████████████████████████████████████ ████████████████████████████.

60.     ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████.

61.     ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

14

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████ .

62.     Indeed, rather than control its spending, DLG requested ███████████

███████████████████████████████████████████████

████████████████ .

## IV.    Use of Funds by Craig Downs and Family

63.     Over the course of at least 2022 to early 2025, DLG owner Craig Downs has used

firm funds for personal expenses and has employed family ████████████████████████

██████████████████████████████████ These expenses are rife with conflicts

and self-dealing.

64.     From 2022 to 2025, DLG paid (using NEKO funds)████████████████████

███████████████████████████████████████████████

███████████████████████████████████ .

65.     In addition to the ██████ base salary drawn by Craig Downs as CEO of DLG,

the firm has also employed both Mr. Downs' wife Jacqueline and his son Craig Jr. in non-lawyer

capacities. While Jacqueline Downs apparently left the firm in 2025, throughout 2023 and 2024

she received an annual salary of at least $█████████████████████████████████████

66.     Similarly, Craig Downs Jr. was initially employed by the ████████████

██████████ making $██████ annually and then, by 2025, was a ████████████████ being paid

$██████ annually.

67.     Thus, Craig Downs' household collected a combined salary of at least $████████ to

$██████ for several years, exclusive of equity distributions or bonuses.

15

68.    These practices are inappropriate given the extraordinary mismatch in ██████

████████████████████████████████████████████████

████████████████████ .

**V.**    ████████████████████

69.    Throughout the spring and summer of 2025, ████████████████████

████████████████████████████████████████████████

████████████████████

70.    ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ .

71.    ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ .

72.    ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ .

73.    ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

## VI.    September 2025 DLG Leadership Meeting

74.    At the request of NEKO's parent Kestrel, a meeting took place on September 9, 2025 between DLG senior attorneys and Kestrel staff. After the meeting, DLG attorneys were asked to provide ████████████████████████████████████████ ██████████████████████████. NEKO communicated that this information was urgent and that DLG should provide it on a rolling basis as it became available.

75.    Most of the material that NEKO received from DLG constituted an unorganized list of overdue ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████.

## VII.    Notice of Events of Default

76.    On September 29, 2025, NEKO emailed DLG notice of multiple Events of Default under the 7th PFPA. The notice identified four independent events of default. A copy of that notice is attached as **Exhibit 7**.

77.    ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████.

78.    ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

79.   ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████.

80.    Finally, as noted in detail above, DLG has repeatedly failed to comply with the financial reporting covenants set forth in ██████████████████ Those covenants require, among other things, ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████.

81.    On October 2, 2025, DLG responded to the notice of default. DLG did not dispute any of the defaults. Instead, it proposed ways to "cure" the defaults ██████████████████

████████████████████████████████████ A copy of DLG's response is attached as **Exhibit 8**.

## VIII.   Overview of DLG's Case Portfolio

82.    NEKO has lost all confidence in the management and business decision making of Craig T. Downs—notwithstanding the undoubted dedication of the DLG staff lawyers to their clients' interests on specific matters. But if independent business decision-making about day-to-

18

day operations of the firm—specifically excluding any strategic legal decisions regarding the representation of existing DLG clients—can be rectified and guided by an appointed receiver, NEKO is willing to provide additional funding to support specific cases NEKO believes could result in successful outcomes for DLG's clients in the near-to-medium-term ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████.

These cases—all anticipated to resolve in the next twelve to twenty-four months—are expected to generate substantial revenue for DLG and return on NEKO's investment.

83.     But NEKO is unwilling to provide further funding without a receiver and is unwilling to fund certain of DLG's cases that have historically proven to be enormous resource drains without the prospect of any significant recovery in a reasonable period of time.

84.     Because DLG has proven that it is unable to enact meaningful financial controls, has a track record of irresponsible spending, has no systems in place to curb Mr. Down's catastrophic business judgment, has misled NEKO on numerous occasions about its intentions and financial status, and has breached the PFAS and security agreements with NEKO innumerable times, NEKO had no choice but to file this lawsuit to preserve its collateral. Without the appointment of a receiver that the agreements contemplate (and to which DLG consents and agreed not to oppose), NEKO's remaining collateral is at significant risk of irreparable harm.

## CLAIMS FOR RELIEF

### Count I
### Breach of Contract

85.     NEKO restates and realleges paragraphs 1 through 82 of this complaint as though fully set forth herein.

86.     The 7th PFPA is a valid and enforceable contract.

87.     NEKO has performed all of its obligations under the 7th PFPA.

88.     As set forth above, DLG has repeatedly breached its obligations under the 7th PFPA, including its obligations to make payments when due, to comply with financial reporting requirements, and to spend NEKO's funds only on permitted categories of expenses.

89.     As a result of DLG's breaches, NEKO has suffered damages in excess of $75,000.00.

90.     As a result of DLG's breaches and its irresponsible gross mismanagement of the business as set forth above, NEKO is at a real and imminent danger of losing its collateral. There is no reasonable possibility of preventing this loss absent the appointment of a receiver to end DLG's gross mismanagement.

91.     ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████

92.     ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

**PRAYER FOR RELIEF**

WHEREFORE, NEKO respectfully requests that this Court enter an order:

A.      Granting judgment in NEKO's favor against Downs Law Group;

B.    Appointing a receiver with the exclusive power to manage all aspects of the

business of DLG (separate and apart from the legal advice it provides its clients);

C.    Awarding NEKO its reasonable attorneys' fees and expenses; and

D.    Granting NEKO such other and further relief that this Court deems appropriate.

Date: October 6, 2025

Respectfully submitted,

**MCDONALD HOPKINS, LLC**
/s/ _Alan M. Burger_
Alan M. Burger. Esq.
Florida Bar No. 833290
501 South Flagler Drive, Suite 200
West Palm Beach, FL  33401
Tel: (561) 472-2121/Fax: (561) 472-2122
Primary Email:
aburger@mcdonaldhopkins.com
Secondary Email:
acrocco@mcdonaldhopkins.com

**McDONALD HOPKINS, LLC**
Stephen J. Rosenfeld (*pro hac vice* pending)
Patrick R. O'Meara (*pro hac vice* pending)
300 N. LaSalle Street, Suite 1400
Chicago, IL 60654
Tel: (312) 642-6103/Fax (312) 280-8232
Primary Email:
srosenfeld@mcdonaldhopkins.com
pomeara@mcdonaldhopkins.com
Seconday Email:
cpfeiffer@mcdonaldhopkins.com

*Counsel for Plaintiff*

36904521.1